David O. Boehm, J.
This action is one involving purported violations of the Consumer Credit Protection Act, generally known as the Truth-in-Lending Act and hereinafter referred to as T-I-L (US Code, tit 15, § 1601 et seq.), and of Regulation Z (12 CFR Part 226), in connection with the financing of certain real property transactions by defendant between July 15, 1974 and July 17, 1975.
In October, 1974, the plaintiffs, Ozelle and Lucretia Vickers, entered into a consumer credit transaction with the defendant, Home Federal Savings & Loan Association of East Rochester, a Federally chartered savings and loan association, which transaction consisted of a loan to plaintiffs to assist in purchase of a parcel of real property, 173 Hazelwood Terrace, Rochester, New York. Plaintiffs gave the defendant their FHA insured bond and mortgage on this property to secure the loan.
On August 5, 1974, defendant, in compliance with T-I-L and Regulation Z requirements, delivered to plaintiffs a disclosure statement setting forth certain information concerning the terms of the proposed loan. The information disclosed included a computation of the annual interest percentage rate of 9%, a statement of prepaid finance charges in the amount of $1,375, an amount financed of $26,125 and a "title examination fee” to be imposed of $275.
The plaintiffs in their amended complaint have, in their first three causes of action disputed the accuracy of disclosure for each of these items and seek recovery in each cause of action for the maximum $1,000 civil liability penalty provided under T-I-L together with costs and attorneys’ fees. Plaintiffs then proceed to allege an additional four causes of action wherein they seek to represent four separate and distinct classes of Home Federal Savings & Loan Association mortgagors, namely:
*882 Class A. All such mortgagors to which defendant Home Federal disclosed inaccurate annual percentage rates between July 15, 1974 and July 17, 1975 in transactions covered by T-IL.
Class B. All such mortgagors on whom defendant imposed insurance premiums for the benefit of the mortgagee which were not included in calculating the annual percentage rates disclosed between July 15, 1974 and July 17, 1975.
Class C. All such mortgagors to whom defendant disclosed inaccurate amounts as title examination fees between July 15, 1974 and July 17, 1975.
Class D. All such mortgagors to whom defendant disclosed inaccurate amounts as "prepaid finance charges” between July 15, 1974 and July 17, 1975.
This matter is now before the court on a motion brought by the plaintiffs pursuant to CPLR 902, 903 and 904 for an order permitting the action to be maintained as four class actions and, further, to describe each class thereunder, to approve the proposed notice and method of giving notice of the action to the members of each class and to require the defendant to pay the cost of such notification.
Preliminary to a determination of the plaintiffs’ motion for class action certification, it is necessary to decide whether a TI-L penalty action may be maintained under the New York class action statute (CPLR art 9).
CPLR 901 (subd b) provides that unless a statute creating or imposing a penalty specifically authorizes the recovery thereof in a class action, an action to recover the penalty may not be brought as a class action.
Therefore, as a prerequisite to permitting plaintiff to proceed, it must be ascertained that T-I-L specifically permits recovery of the civil penalties provided for therein through the vehicle of a class action. Since New York’s class action legislation is modeled on Federal rule 23 (Fed Rules Civ Pro [in US Code, tit 28, Appendix]), the Federal cases interpreting it may be helpfully referred to.
Prior to the 1974 amendment of subdivision (a) of section 130 of T-I-L (US Code, tit 15, § 1640, subd [a]) the courts of the Federal system were reluctant to certify class actions under rule 23 to recover T-I-L penalties because of the "annihilating punishment” made possible by damage awards in the minimum amount of $100 per unlimited class member as then *883 permitted (see, e.g., Ratner v Chemical Bank New York Trust Co., 54 FRD 412, 416). In response, Congress replaced the minimum and unlimited liability provisions in class actions with an aggregate limitation of recovery of $100,000 or 1% of a creditor’s net worth, whichever is lower.
The amendment (US Code, tit 15, § 1640, subd [a]) provides as follows:
"(a) * * * Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part or part D of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—
"(1) any actual damage sustained by such person as a result of the failure;
"(2)(A) in the case of an individual action twice the amount of any finance charge in connection with the transaction, except that the liability under this subparagraph shall not be less than $100 nor greater than $1,000; or
"(B) in the case of a class action, such amount as the court may allow, except that as to each member of the class no minimum recovery shall be applicable, and the total recovery in such action shall not be more than the lesser of $100,000 or 1 per centum of the net worth of the creditor; and
"(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney’s fee as determined by the court.”
Defendant contends that in spite of the amendment, there is no specific language to be found anywhere in T-I-L which specifically authorizes a class action to recover a penalty or a minimum measure of recovery. In support, defendant puts forth the proposition that the only purpose intended by Congress in amending T-I-L was to place a ceiling on the potential class action recovery, thereby encouraging the Federal courts to permit class actions to be maintained under rule 23. Defendant further argues that no Federal case has been found wherein it has been held that T-I-L specifically authorizes a class action to recover a penalty and that in all such cases the certification of class actions is left to the sound discretion of the courts under Federal rule 23 (see, e.g., Agostine v Sidcon Corp., 69 FRD 437; Postow v Oriental Bldg. Assoc., 390 F Supp 1130).
Finally, defendant cites in argument the Practice Commen *884 tary relating to CPLR 901 (subd b) (McKinney’s Cons Laws of NY, Book 7B, 1975-1976 Pocket Part, CPLR 901, pp 65, 66) in which Professor McLaughlin appears to take the position that an action to recover the "minimum recovery” under T-I-L cannot be maintained as a class action, and the commentary found in Weinstein-Korn-Miller (2 Weinstein-Korn-Miller, NY Civ Prac, par 901.13) where the writers have arrived at a similar conclusion.
In all respect, I must disagree with the conclusions drawn by these learned commentators.
The very language of T-I-L refers to the bringing of a class action, and sets forth a maximum total recovery in such case. Clearly, this contemplates authorization for the maintenance of such an action even though a statement expressly authorizing the same may not be set forth in haec verbae. To require such a predicate verbalistic ritual would be exalting form over substance.
The Federal case law construing T-I-L, as well as the legislative history of the 1974 amendment, clearly resolves the question as to the right to bring a class action under T-I-L, subject always, of course, to the procedural criteria of Federal or State rules (Agostine v Sidcon Corp., 69 FRD 437, 444, supra; Postow v Oriental Bldg. Assoc., 390 F Supp 1130, 1140, supra; Senate Comm. on Banking, Housing and Urban Affairs, S Rep No 93-278, June 29, 1973; Cong Record, April 27, 1972, S6911-6914; Cong Record, July 23, 1973, S25414-25419).
In the Senate debates on the amendment, the comments of Senator Hart in its favor are typical of the expressions of intention made by the amendment’s Senate sponsors.
"The actual damages”, he pointed out, "resulting from abuses of disclosure, billing practices, and discrimination are usually negligible or extremely difficult to prove. For that reason, we set up a minimum award of $100 for an individual action in our original act. But lawyers’ fees and the costs of suit are such that the only truly effective means of enforcing the sound provisions of this act is by class suits * * *
"The object in this type of class suit is not so much to compensate the injured party, but to give an economic incentive to companies for compliance with the law.
"The Federal Reserve Board, intimately familiar with the structure of the credit industry, recommended that the maximum be set at the greater of $50,000 or 1 percent of net *885 worth. They emphasized the prophylactic effect of the threat of class action exposure. That threat elevates a possible truth-in-lending lawsuit from the ineffective nuisance category to the type of suit which has enough sting in it to insure that management will strive with diligence to achieve the compliance.” (Cong Record, July 23, 1973, supra, S 25419.)
Senator Proxmire, Chairman of the Senate Committee on Banking, Housing and Urban Affairs which sponsored the amendment, unequivocally stated during debate: "Section 130(e) of this act authorizes consumers to bring class actions in the Federal courts against creditors who violate truth in lending.” (Cong Record, April 27, 1972, S 6912.)
The fact that in each case the right to bring a class action may depend upon provisions external to and independent of TI-L, such as Federal rule 23 or CPLR 901, does not, therefore, mean that a class action is not "authorized” by T-I-L. To construe it otherwise, as defendant suggests, would require either that T-I-L contain its own unique and special class action requirements applicable solely to it, or that it mandated that a class action be brought in every case. But of course, neither is necessary to authorize a class action. What is necessary is that such an action be (1) contemplated and (2) meet the standards uniformly required in the bringing of any class action, regardless of the particular relief sought. The defendant, in arguing to the contrary, is confusing substantive relief with procedural criteria.
In view of the stated intention of Congress to provide class action relief and that damages via a class action are expressly granted by T-I-L, it appears, further, that a fundamental principle governing the resolution of the issue has been perceived neither by the parties nor the writers, i.e., the Supremacy Clause of the Constitution.
Section 2 of article VI of the United States Constitution provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.”
In matters relating to exercise of concurrent jurisdiction between Federal and State courts, it is a well-established constitutional principle that a State court may not refuse *886 jurisdiction over a Federal question case otherwise within its general competence (Testa v Katt, 330 US 386). The obligation of States to enforce these Federal laws is not lessened by reason of the form in which they are cast or the remedy which they provide. In Clafin v Houseman (93 US 130, 137) the Supreme Court stated: "If an act of Congress gives a penalty to a party aggrieved, without specifying a remedy for its enforcement, there is no reason why it should not be enforced, if not provided otherwise by some act of Congress, by a proper action in state court.”
The policy of T-I-L is the prevailing policy in every State and a State court may not refuse to enforce the rights arising from the law of the United States because of conceptions of inconsistency or lack of harmony with the policy of the particular State.
It being the established Federal policy to permit class actions for enforcement of T-I-L penalties for the express purpose of increasing the monetary award available, an interpretation of CPLR 901 (subd b) barring such actions in the courts of this State because of a failure to find specific authority under T-I-L would appear to be unconstitutional.
Under CPLR 901, a suit may be maintained as a class action if it appears that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class which predominate over any questions affecting individual members; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; (4) the representative parties will fairly and adequately protect the interests of the class; and (5) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.
Although the exact size of each of the classes proposed by plaintiffs is not determined with certainty at the present time, partial pretrial discovery has revealed that the total members for all classes will number at least 399. Therefore, the classes taken as a whole are sufficiently numerous to make joinder of all members impracticable (see Manning v Princeton Consumer Discount Co., 390 F Supp 320, 324; Settle v Mallicott Auto Sales, CCH Consumer Credit Guide, par 99,089; Craig v Credit Bureau of Albuquerque, CCH Consumer Credit Guide, par 98,659).
Under CPLR 901, it is no longer necessary that the question or questions involved be of "common or general interest” as *887 required by former CPLR 1005. The then substantive unity of interest requirement has now been replaced by the standard of whether questions of law or fact "predominate over any questions affecting only individual members”. (CPLR 901, subd a, par 2.) In short, it is the test of predominance, rather than the more restrictive one of substantive unity, which now controls.
Even so, as noted in Weinstein-Korn-Miller: "The use of a predominance test was not meant to create any rigid criteria in determining whether a class action should proceed but a pragmatic, functional test with the determination resting in each case upon whether the group is more bound together by a mutual interest in the settlement of common questions than it is divided by the individual members’ interest in matters peculiar to them.” (2 Weinstein-Korn-Miller, NY Civ Prac, par 901.08, p 9-31.)
Applying this test, a review and analysis of plaintiff’s amended complaint establishes that there are questions of law and fact common to the proposed classes which predominate over any questions affecting the individual class members. The factual question relates to the procedures which defendant maintained to avoid errors in the disclosure required under TI-L. The questions of law are whether the defendant’s disclosures, as made, violated T-I-L and Regulation Z and whether the procedures maintained by defendant to avoid proven errors are sufficient to disprove liability.
Defendant has correctly emphasized that the alleged errors in disclosure are of various kinds (e.g., overdisclosure of annual percentage rates and legal fees in some instances and underdisclosure in others as well as improper calculations involving mortgage insurance premiums which may be applicable to FHA, VA or conventional mortgages) and that each type of purported error or omission may be subject to a wholly different and complex defense. However, this argument concerns proof to be offered at the time of trial and has no efficacy in displacing the commonality of issues set forth by the plaintiffs. Neither is the fact that a proposed defense is circumstantial or complex sufficient to divest the class action of superiority (Professional Adj. Systems of Amer. v General Adj. Bur., 64 FRD 35).
It should also be noted that the plaintiffs’ claims are typical of those of the proposed class. That is, given the making of a loan by defendant to a class member and the placement of a *888 mortgage on that person’s property, are the members of the class entitled to the disclosures required by T-I-L and Regulation Z.
However, in finding in favor of commonality and typicality, it should be observed that plaintiffs’ application to certify four separate and distinct classes under CPLR 906 does not seem necessary or appropriate in the present posture of this action. Broad inclusion should be encouraged in the prosecution of class actions and what we are dealing with here appear to be categories rather than classes. Accordingly, they need not now be certified separately.
Assuming the requisite conditions are met, the more expeditious approach to remedy the alleged wrongs perpetrated upon those persons described by plaintiffs would dictate certification of one class to be all persons who have received loans from the defendant and who have entered into contractual relations with the defendant by way of mortgages on their property between July 15, 1974 and July 17, 1975 and who were not provided with the disclosures required by the Consumer Credit Protection Act (US Code, tit 15, § 1601 et seq.). In so defining the class, the plaintiffs may complete their pretrial discovery procedures and thereafter ascertain the nature and extent of all purported violations of T-I-L upon which it is intended that proof will be offered. Only at such later time and upon a determination that the complexity of the issues so require, may a meaningful and appropriate subdivision of the classes be described.
In determining whether an action may appropriately be certified as a class action, it is also necessary to ascertain whether the representative parties will fairly and accurately protect the interests of the class and whether a class action is superior to other available methods for the fair and efficient adjudication of the controversy.
In the case at bar, it is possible that the recovery made by a class member may be in an amount less than that recoverable by plaintiffs in their individual actions. This situation results from the statutory limitation on total recovery for a class action, set at the lesser of $100,000 or 1% of the creditor’s net worth (US Code, tit 15, § 1640, subd [a], par [2], cl [B]).
Plaintiffs have alleged a potential class membership in excess of 558. Defendant discloses a net worth of between 3.660 million and 4.311 million dollars during the period of the alleged violations, of which one percent will not exceed *889 $43,110. Therefore, assuming a one class recovery, it is possible that each member would recover less than $80. This would be less than the $100 minimum individual recovery permitted by section 1640 (subd [a], par [2], cl [A]) of title 15 of the United States Code and substantially below the $1,000 maximum individual amount recoverable based upon a penalty equal to twice the "finance charge” up to $1,000.
Since a named plaintiff might be forced to take less in a class action than he might otherwise obtain by way of an individual action, the defendant raises serious doubt as to whether a class action is superior to other available methods of recovery and also whether the plaintiffs can fairly and adequately protect'the class.
Even if four separate classes were certified and adopting plaintiffs’ present numerical membership in each proposed class and assuming each class may divide a separate class penalty, the recovery for class A would be $282; class B $463; class C $517; class D $406. Each sum is substantially less than the individual permissible recovery.
This problem was considered by way of a hypothetical in Boggs v Alto Trailer Sales (511 F2d 114, 118) wherein the Court of Appeals remanded a case to the District Court, which had denied certification of a class action, with instructions to consider the effect of potential reduced damages in determining superiority of the class action.
Plaintiffs would respond to this problem by providing in the proposed notice to potential members of the class a full disclosure of the right to sue individually for damages together with an opportunity to opt out of the class if so desired, an approach suggested in the recent case of Agostine v Sidcon Corp. (69 FRD 437, supra).
In view of the complexity of actions brought under T-I-L and the necessary expenditure of substantial time and funds in order to assert individual rights, it would not seem likely that a substantial number of individual suits would be instituted. On balance, the plaintiffs’ proposed notice would fairly satisfy the interests of justice by giving each proposed class member a choice of procedural remedies and would allow participation by aggrieved persons who might otherwise be deprived of a remedy because of the practical hardships characteristic of TI-L litigations.
The plaintiffs’ notice should also disclose to class members, in plain and easily comprehensible language, the ranges of *890 recovery as a class member and as an individual plaintiff, as well as the relative rights, risks and responsibilities of each class member in a class action as opposed to an individual action.
It must also be considered whether the plaintiffs will fairly and adequately protect the interests of the class in light of the fact that they seek their full statutory penalties as individuals while also attempting to recover potentially reduced awards for the represented class. The defendant, therefore, argues that they are in potential conflict with the very class they propose to represent.
This problem was considered in Weathersby v Fireside Thrift Co. (CCH, Consumer Credit Guide, par 98,640), wherein class certification was denied upon plaintiff’s request that the court provide in the order certifying the class that individual recovery would not be affected by certification. It was there concluded that because the plaintiff might receive money that would otherwise go to unnamed class members they could not fairly and adequately protect the interests of the class. This analysis was cited with approval in Agostine v Sidcon Corp. (69 FRD 437, supra) but rejected in Postow v Oriental Bldg. Assn. (390 F Supp 1130, 1140-1141, supra).
In response, the plaintiffs cite Goldman v First Nat. Bank of Chicago (392 F Supp 214), where the Seventh Circuit found the denial of class certification to be an abuse of discretion after the plaintiff sought to disclaim the $100 minimum statutory amount of recovery on behalf of himself and all other members of the class. The court below had determined that the individual waiver would cause the plaintiff to have no common interest with the members of the class.
The resolution of whether the class representative may recover individual damages (US Code, tit 15, § 1640, subd [a], par [2], cl [A]) at the same time class members share awards (US Code, tit 15, § 1640, subd [a], par [2], cl [B]) is a question that need not be determined here.
It is sufficient to state that to encourage the private enforcement of T-I-L, it is appropriate that the applicable procedural devices should be preliminarily interpreted to give effect to the legislative purpose and to permit the plaintiffs to represent the class. For this purpose, it is not necessary to decide in this application whether they should be permitted to proceed with their individual claims. That is a question to be taken up and resolved at the proper time. The authority and discretion *891 of the court continue with respect to this question as well as any other that may arise, including the continuing advisability of a class action, the adequacy or superiority of representation, and the like.
The application of this principle is particularly appropriate in view of the developed rule that advance determinations or predictions as to the merit of a claim should be avoided in determining adequate class representation (Huff v N.D. Cass Co. of Alabama, 485 F2d 710, 714; Kahan v Rosenstiel, 424 F2d 161, cert den sub nom. Glen Alden Corp. v Kahan, 398 US 950; Hoston v United States Gypsum Co., 67 FRD 650, 653-654), provided the "necessary nexus” with the proposed class is demonstrated (Long v Sapp, 502 F2d 34, 43).
As the plaintiffs point out, the nature of the defenses available to the defendant makes it inevitable that the plaintiffs will be obliged to prove, even if they sue individually, that the defendant’s procedures were inadequate because there were violations not only as to the plaintiffs but as to many others, i.e., the class members, as well. Accordingly, it may be reasonably concluded at this stage of the proceedings that the interest of the plaintiffs is coextensive with that of the proposed class members.
Moreover, in the instant case, any suggested conflict between the plaintiffs and the unnamed class members is more imagined than real. Various courts have certified class actions where the representative’s claims were substantially different in amount than the class members (City of New York v General Motors Corp., 60 FRD 393; City of Philadelphia v American Oil Co., 53 FRD 45; Eisen v Carlisle & Jacquelin, 391 F2d 555; Siegel v Chicken Delight, 271 F Supp 722).
The class members and the class representative need not have identical claims provided they have a sufficient coextensive interest (Koehler v Ogilvie, 53 FRD 98, affd 405 US 906; Herbst v Able, 47 FRD 11; Epstein v Weiss, 50 FRD 387; Buchholtz v Swift & Co., 62 FRD 581, 596). Nor does the fact that the named plaintiff seeks different relief or may be awarded different relief render the class representation inadequate (Seligson v Plum Tree, 55 FRD 259, 261-262; Tober v Charnita, 58 FRD 74, 80).
Even under the more rigid standards of former CPLR 1005, our Court of Appeals has held that where there are common issues which are predominant, even though they are not identical, there is "a sufficient common tie” to permit class *892 certification (Ray v Marine Midland Grace Trust, 35 NY2d 147, 154). As the Governor’s approval message stated, the class action enables persons "injured by the same pattern of conduct” to seek relief in one lawsuit (McKinney’s Session Laws of 1975, Governor’s Memorandum, p 1748).
Accordingly, the fact that the plaintiffs herein may be awarded damages under a different section of T-I-L than the class members or that they may receive a somewhat larger monetary award is not sufficient to render their representation inadequate.
One additional criteria by which the adequacy of plaintiffs’ representation may be determined is that the plaintiffs’ attorney must be qualified, experienced and generally able to conduct the proposed litigation (Wetzel v Liberty Mut. Ins. Co., 508 F2d 239, 247, cert den 421 US 1011). Although defendant has questioned the experience of the plaintiffs’ attorney, this court finds that the educational credentials and work-related experience of plaintiffs’ counsel is more than adequate and that he will ably pursue this matter.
Finally, defendant has questioned whether plaintiffs may be permitted to claim that the class action recovery will be increased or multiplied beyond the single maximum class action recovery in view of the fact that they have pleaded four separate class causes of action in the amended complaint. The resolution of this problem is not technically necessary at this juncture of the proceedings and may await a subsequent determination of the necessity or appropriateness of further class division. The parties may at that time more adequately brief this point with respect to their relative positions.
The defendant’s argument that because its mortgage was upon a three-family house it is therefore not governed by T-I-L disclosure requirements is premature. The exemption applies to the owner of a dwelling with more than four family units. Credit extended to the owner of such a property is conclusively presumed to be for a commercial purpose. But transactions involving dwellings with fewer units should be decided on a case-by-case basis and the determination in this case must await trial (see Federal Reserve System Bd. of Governors Opn. Letter, Aug. 19, 1975).
Upon consideration of all the elements of this case and for the reasons set forth, this action may be maintained as a class action with a class consisting of all persons who have received loans from the defendant, who have entered into contractual *893 relations with it by way of mortgages on their property between July 15, 1974 and July 17, 1975 and who were not provided with the disclosures required by T-I-L.
By such certification, no finding is made either expressly or implicitly that over-disclosure, whether systematic or otherwise, would entitle the over-disclosed members of the class to damages or penalties of any kind. Although the views of the Federal Reserve Board in this regard, referred to in the plaintiffs’ supplemental brief, are of interest and, indeed, persuasive, they are by no means binding upon this court. Whether a technical noncompliance with Regulation Z which does not violate the spirit or intent of T-I-L gives rise, nevertheless, to a penalty is a question not decided here. Suffice it to say that leaving this question open does not preclude certifying the members of such over-disclosed category into the general class at this point.
It is further ordered that plaintiffs’ proposed notice to potential class members be modified in accordance with this memorandum and the same be resubmitted to this court for approval whereupon the defendant shall give notice of the action to each class member at its expense subject to a final determination of the appropriate parties to bear said expense upon termination of this action.
Upon completion of pretrial procedures in this matter, the court will entertain motions for appropriate orders concerning certification of subclasses and other further procedures as may be required.
In conclusion, the court wishes to commend counsel for the plaintiffs and the defendant. The thoroughness and scholarship of their briefs, reply briefs and supplemental briefs were of considerable aid in this relatively new area of law and their preparation obviously involved the expenditure of much time and research.