Douglas F. Young, J.
Following several weeks of unsuccessful negotiations, the defendant Long Island Sports, doing business as The New York Nets (the "Nets”), sold its superstar Julius Erving ("Dr. J.”) to the Philadelphia 76ers for a large sum of cash. As in other transactions involving professional athletes, the courts have been called upon to referee a dispute respecting the aftermath of that transaction (see, e.g., Flood v Kuhn, 407 US 258; Mackey v National Football League, 407 F Supp 1000; Kapp v National Football League, 390 F Supp 73; Robertson v National Basketball Assn., 389 F Supp 867; Philadelphia World Hockey Club v Philadelphia Hockey Club, 351 F Supp 462). Unlike these cases, here the fans, rather than the players, have blown the whistle and now ask the court to call a foul.
Plaintiff Mark Strauss is the owner of four season tickets for the Nets 1976-1977 season. He purchased the tickets in the summer of 1976 after the Nets won the 1975-1976 American Basketball Association championship and became a member of the National Basketball Association. During that summer, the Nets placed several advertisements in various newspapers by which they solicited purchasers for season tickets. Some of these advertisements included the following language: "See the fantastic Dr. M’ in action. Designated league MVP and PRO player of the year. Sport magazine playoff — MVP.”
Mr. Strauss claims that he, and thousands of others, purchased their tickets because these advertisements publicized the presence of Dr. J. and led him and the other purchasers to purchase their tickets "in the reasonable expectation that Julius Erving would play unless injured”. The absence of Dr. J., he claims, deprived season ticket purchasers of the "principal reason” for their purchases. In more legalistic language, the foul which Mr. Strauss calls is failure of consideration.
Mr. Strauss served a summons and complaint on the Nets *829 on October 22, 1976. On that same day, one Herbert J. Krohn, instituted a lawsuit against the Nets in the Nassau County District Court. His complaint recites that in July, 1976, the Nets sent him a brochure which contained a letter signed by Dr. J., inviting him to purchase tickets for the 1976-1977 season. He claims to have purchased his tickets in reliance on the representation that Dr. J. would play for the Nets. He sues for breach of contract in the amount of $741. On October 25, 1976, Gerard Davidoff instituted an action in the Nassau County District Court, Small Claims Part. He alleged that the Nets breached their contract with him because of their "failure to have Julius Erving play”. On October 28, 1976 James F. Maiella instituted another small claims action against the Nets for breach of contract. His suit too, is based upon the sale of Dr. J.’s contract to Philadelphia.
At approximately the same time the lawsuits were filed, the New York State Attorney-General, responding to fan and press reactions to the sale of Dr. J.’s contract, instituted an investigation, pursuant to article 22-A of the General Business Law to determine if any consumer protection laws were violated by the transaction. The defendant entered into an agreement with the Attorney-General whereby each season ticket holder who purchased his tickets prior to the sale upon the basis that Dr. J. would play for the Nets, would receive a rebate of 10% of the price of his 1976-1977 season tickets or a 10% discount toward the purchase of 1977-1978 season tickets. Any ticket holder who elects either one of these options waives his right to any further relief against the Nets.
The results of the Attorney-General’s offer were as follows: The holders of 960 season tickets to the Nets filed affidavits with the Attorney-General and received refunds.
The Nets, seeking to simplify matters, now move this court to consolidate the Krohn, Davidoff and Maiella lawsuits into this one. Strauss opposes this motion and cross-moves, pursuant to CPLR 902, for an order determining that this action shall be maintained as a class action. Krohn, Davidoff and Maiella oppose both motions.[1] They wish to obtain a quick determination with a minimum of procedural delays. Because a determination that this action should proceed as a class *830 action would render the question of consolidation moot (at this time), that question will be considered first.
CPLR 901 (subd a) lists the prerequisites for the maintenance of a class action as follows:
"a. One or more members of a class may sue or be sued as representative parties on behalf of all if:
"1. the class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;
"2. there are questions of law or fact common to the class which predominate over any questions affecting only individual members;
"3. the claims or defenses of the representative parties are typical of the claims or defenses of the class;
"4. the representative parties will fairly and adequately protect the interests of the class; and
"5. a class action is superior to other available methods for the fair and efficient adjudication of the controversy.”
All five prerequisites must be met, or the parties will be relegated to playing "one on one” rather than in a "zone”[2] sought under article 9 (2 Weinstein-Korn-Miller, NY Civ Prac, par 901.06, p 9-26). A discussion of the five factors follows:
1. Is the class so numerous that joinder of all members is impracticable?
There is some dispute respecting the size of the class. Plaintiff defines the class as "all persons who purchased season tickets for the Nets 1976-1977 season prior to the announcement that Julius Erving has been sold”. Defendant’s papers recite that 761 season tickets were sold during the period between the commencement of advertising for sale of the 1976-1977 season tickets and the announcement that Dr. J. had been traded to Philadelphia. Because the gravamen of the complaint is that the consideration for the purchase — the presence of Dr. J. as advertised — failed, only those who bought season tickets as a result of the defendant’s advertising campaign and prior to the announcement of the trade should be considered members of the class.
The ascertainment of the number of potential class members is complicated by the results of the Attorney-General’s settlement with the defendant. Those fans who accepted the *831 settlement represented that their, ticket purchases were made in reliance on the presence of Dr. J. and also waived any and all rights against the Nets. It cannot be ascertained how many of those who accepted this settlement purchased their tickets during the advertising campaign of July, August and September, 1976.
This difficulty should not, standing by itself, preclude plaintiff from achieving class action status. The so-called "numerosity” requirement (see 3B Moore’s Fed Prac [2d ed], par 23.05), while a significant factor in the determination of a class action motion, does not include a requirement that the exact number of members in the proposed class be made known to the court at the outset (Vickers v Home Fed. Sav. & Loan Assn., 87 Misc 2d 880, mod 56 AD2d 62; Federman v Empire Fire & Mar. Ins. Co., 19 FR Serv 2d 480, 482 [SD NY, 1974]). The approach taken by the Federal courts under rule 23 of the Federal Rules of Civil Procedure, upon which CPLR article 9 is based (2 Weinstein-Korn-Miller, NY Civ Prac, par 901.03, p 9-19), is to look to the totality of the circumstances of each case (Cypress v Newport News Gen. & Nonsectarian Hosp., 375 F2d 648, 653; 2 Weinstein-Korn-Miller, NY Civ Prac, par 901.07, p 9-28). Thus, the "numerosity” requirement has been satisfied and class actions have been certified where members of a potential class were geographically dispersed (Korn v Franchard Corp., 456 F2d 1206; Kinzler v New York Stock Exch., 53 FRD 75) or their individual claims were so small that it would not have been economically feasible for them to undertake individual action (Swanson v American Consumer Ind., 415 F2d 1326, 1333; Kinzler v New York Stock Exch., supra; 3B Moore’s Fed Prac [2d ed], par 23.05; 2 Weinstein-Korn-Miller, supra, par 901.07). In Swanson v American Consumer Ind. (supra) the Court of Appeals for the Seventh Circuit held that 151 minority shareholders of a corporation merged into the defendant corporation were sufficiently numerous to permit a class action to proceed, even though 60 of them accepted an exchange of stock and 51 never received the allegedly deceptive notice of meeting involved. By way of dictum, the court stated that even a class limited to those shareholders who did not accept the exchange offer would be sufficient (p 1333, n 9). The court stated (p 1333): "To require a multiplicity of suits by similarly situated small claimants would run counter to one of the prime purposes of a class action.”
*832 Similarly, in Korn v Franchard Corp. (supra, p 1209) where a majority of the members of the potential class had executed releases to the defendant and only 212 of 1154 potential class members had indicated an interest by filing proof of claim forms, the United States Court of Appeals for the Second Circuit reversed the District Court’s order withdrawing class action status.
It should also be noted that the requirement of impracticality of joinder does not require a showing of impossibility (3B Moore’s Fed Prac, par 23.05, p 23-280). Extreme difficulty or inconvenience in joining all members of the class is all that is necessary (id.).
When reviewed in light of the foregoing principles, the court finds that the requirements of CPLR 901 (subd a, par 1) are met. The putative class is indeed numerous, and may include as many as 761 persons, i.e., the purchasers of season tickets during the period of the defendant’s promotional campaign. Moreover, joinder of all of these persons would pose extreme logistical difficulties and would, in view of the small financial claim of each ticket holder, be unlikely.
If, however, the response to the notice of class determination, which must be ordered herein (CPLR 904), demonstrates that the number of potential class members who have accepted the Attorney-General’s settlement or wish to be excluded from the class (CPLR 903) is such that "numerosity” is destroyed, the court may enter a further order removing class status from the action (CPLR 907, subd 4). However, it would be improper to have a denial of class action status based upon mere speculation as to how many members of the class would seek exclusion or are apathetic about the action (Korn v Franchard Corp., supra; Mersay v First Republic Corp. of Amer., 43 FRD 465).
2. Are there questions of law or fact common to the class which predominate over questions affecting only individual members?
This requirement, enunciated in CPLR 901 (subd a, par 2), is less restrictive than the so-called "substantive unity” test which prevailed under former CPLR 1005 (Vickers v Home Fed. Sav. & Loan Assn., 87 Misc 2d 880, supra). Thus, the existence of some individual question or questions would not necessarily make the certification of a class improper. "The use of the language that the common questions of law or fact must predominate represents a clear intent on the part of the *833 drafters that the existence of individual questions will not defeat the granting of class status to an action as so often occurred under prior CPLR 1005. The use of a predominance test was not meant to create any rigid criteria in determining whether a class action should proceed but a pragmatic, functional test with the determination resting in each case upon whether the group is more bound together by a mutual interest in the settlement of common questions than it is divided by the individual members’ interest in matters peculiar to them.” (2 Weinstein-Korn-Miller, NY Civ Prac, par 901.08, p 9-31.)
Defendant, in its moving papers, concedes that all of the cases now pending involve identical questions of law and that this action and the Krohn action "set forth similar claims as to the facts”. It contends, however, that an essential element of each individual plaintiff’s case is his individual reliance upon the presence of Dr. J. and that a major portion of the trial will be devoted to proof respecting such individual reliance. Thus, defendant concludes, questions affecting individual members of the class predominate over common questions.
Defendant relies on Weaver v Pasadena Tournament of Roses Assn., (32 Cal 2d 833) for the proposition that reliance upon the representation that Dr. J. would play for the Nets must be proven by each member of the class and for the proposition that the need for such individual proof renders the certification of this case as a class action improper. The court finds that Weaver is readily distinguishable for the simple reason that it was decided under a statute whose requirements were more stringent than CPLR 902, particularly with respect to the "common questions” issue. That statute permitted a class action "when the question is one of a common or general interest” (p 837; citations omitted). It is interesting to note that the statutory language cited in Weaver is the same as that of former CPLR 1005, under which a stringent "substantive unity” standard was followed. The "predominance” standard of CPLR 901 (subd a, par 2) is, as discussed above, a less restrictive standard (see, also, McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 901, C 901:3). Thus, the individual reliance question would be better analyzed in accordance with CPLR 901 (subd a, par 2) and rule 23 (subd [b], par [3]) of the Rules of Civil Procedure its Federal counterpart.
In Ross v Amrep Corp. (NYLJ, July 1, 1976, p 8, col 1), Mr. *834 Justice Tyler held that the presence of individual questions of reliance did not preclude the maintenance of a class action to recover damages for fraud. Similarly, in Guadagno v Diamond Tours & Travel, 89 Misc 2d 697, 699, an action against a travel agent for fraud and breach of contract, Mr. Justice Tierney stated: "The circumstances of this case, involving a cohesive and finite group of similarly situated vacationers, who relied upon essentially identical representations in advertising matter, are amenable to class action treatment. That there may also exist individual questions, with regard to reliance and damages, is not dispositive; the determination in each case rests upon 'whether the group is more bound together by a mutual interest in settlement of common questions than it is divided by the individual members’ interest in matters peculiar to them’ (2 Weinstein-Korn-Miller, NY Civ Prac, par 901.08).”
In the instant case, we have a finite class of basketball fans who relied upon the advertised presence of Dr. J. ("essentially identical representation in advertising matter”) whose common interest is relief for having received less than they had bargained for. The primary legal and factual questions for the court are whether the Nets failed to deliver what they promised. Those questions are ones in which each member of the class has a common interest.
Defendant’s attempt to distinguish this action from Ross and Guadagno on the ground that this action does not involve fraud is unpersuasive. Both Ross and Guadagno recognize the possibility that individual questions of reliance will arise and hold that their presence does not preclude class relief. Such questions are no more or no less individual when raised in the context of a breach of contract action than in one based upon fraud. Moreover, the rule that where representations are made as part of a "common nucleus of operative facts”, common questions predominate over the individual issues of reliance (Siegel v Chicken Delight, 271 F Supp 722), is persuasive here, where the alleged representations were made to the public at large rather than to class members individually (see, also, Siegel v Realty Equities Corp. of N Y, 54 FRD 420).
3. The remaining criteria of CPLR 901 (subd a).
The remaining three requirements of CPLR 901 (subd a) and the guidelines of CPLR 902 are less hotly contested than those discussed above. The claims of plaintiff are typical of the *835 class as defined by the court (CPLR 901, subd a, par 3). Plaintiffs ability to fairly and adequately protect the interests of the class does not appear to be contested. The affidavits of counsel amply demonstrate his experience in prosecuting this type of action and plaintiffs interest in recovering damages is the common interest of the class (CPLR 901, subd a, par 4; Ross v Amrep Corp., NYLJ, July 1, 1976, p 8, col 1, supra).
CPLR 901 (subd a, par 5), which requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy” is also satisfied. In his memorandum approving CPLR article 9, Governor Carey noted that "This bill * * * will enable individuals injured by the same pattern of conduct * * * to pool their resources and collectively seek relief. By permitting common questions of law or fact affecting numerous persons to be litigated in one forum, the bill would result in greater conservation of judicial effort.” (NY Legis Ann, 1975, p 426.) Both purposes would be served by granting plaintiffs cross motion. The class consists of persons with small claims which make individual action economically impossible for many of them. It is also important to note that judicial economy would be served by settling these claims in one lawsuit in one forum.
Accordingly, the court will enter an order determining that this action shall proceed as a class action as the class has been defined herein (CPLR 902). In reaching this conclusion, the court has considered the factors listed in CPLR 902 and its findings with respect to those factors are implicit in the previous portions of this opinion. The fact that there are several lawsuits pending respecting this action and some of those litigants may wish to proceed outside of the class does not, in the court’s opinion, outweigh the consideration of the inefficiency which separate actions by all potential class members would involve. Moreover, professional sports play an important role in our society, in both a cultural and commercial sense. The issue raised in this case is of some significance to professional sports and its customers and would be best resolved by one well-litigated lawsuit in the Supreme Court.
Settle order on notice. The order shall include a definition of the class which comports with this opinion and shall provide that the class shall not include those who request exclusion within 30 days after notice of the action is given (CPLR 903). The parties shall include their proposals for the manner in *836 which notices of this action shall be given in their respective orders (CPLR 904).

. Subsequent to the argument of this motion, Davidoff withdrew his claim against the Nets. He stated that his real complaint against the Nets was that they gave him the wrong seats.

. Unlike the rule in the National Basketball Association, the rules of the courts permit zone defense and offense.