SHEILA RODMAKER, Indiv. and on Behalf of all Others Similarly Situated, Plaintiff-Appellee, v. JOHNS HOLDING COMPANY, INC., formerly d/b/a Credit Bureau of Decatur, *et al.*, Defendants-Appellants.

Fourth District   No. 4—90—0194

Opinion filed November 26, 1990.

Thom Moss and Darrell E. Statzer, Jr., both of Wilson, Dyar, Moss & Statzer, of Decatur, for appellants.

Phillip M. Kirby, of Mason City, for appellee.

JUSTICE GREEN delivered the opinion of the court:

Section 2—801 of the Civil Practice Law (Law) provides:

"Prerequisites for the maintenance of a class action. An action may be maintained as a class action in any court of this State and a party may sue or be sued as a representative party of the class only if the court finds:

\*\*\*

(2) There are questions of fact or law common to the class, which *common questions predominate* over any questions affecting only individual members." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 110, par. 2—801.

■ This appeal is from an order of the circuit court of Macon County entered on January 8, 1990, denying a motion to dismiss a

complaint and certifying the case as a class action. Pursuant to Supreme Court Rule 308 (107 Ill. 2d R. 308), we granted leave to appeal after the circuit court entered an order on January 19, 1990, making the findings required by that rule. That order identified "the questions of law involved" (107 Ill. 2d R. 308) as:

"(a) Whether the Court's Order of January 8, 1990 is sufficient pursuant to 110 Ill. Rev. Stat., Sec. 2—801.

(b) Whether the Court abused its discretion in finding that in the instant case the *predominant* questions of the validity of the notice and the right to the penalty 'in this cause' support[ ] certification and that this issue is not negated by Defendants' admission of well pleaded facts in its Motion to Dismiss." (Emphasis added.)

We hold the court's order is sufficient to meet the requirements of section 2—801 of the Law, but the questions of the validity of notice and right to penalty, which we will explain, are not sufficiently "predominant" to justify the certification of the cause as a class action.

The litigation began on September 7, 1989, when plaintiff Sheila Rodmaker, on her own behalf and that of all others similarly situated, filed a complaint against defendants Johns Holding Company and its successor in interest CSC Credit Services, Inc., in the circuit court of Macon County. The complaint alleged that, within the previous five years, defendants wrongfully served on plaintiff, and others, a "Notice of Intent to Assign Wages" that did not conform to section 2.2 of the Illinois Wage Assignment Act (Act) (Ill. Rev. Stat. 1987, ch. 48, par. 39.2b). The complaint requested the court declare the proceeding a class action pursuant to section 2—801 of the Law and certify all the persons who have received similarly improper notices of wage assignments in the preceding five years as members of the class. The complaint alleged compliance with each of the stated prerequisites of section 2—801 of the Law.

At all times pertinent, section 2 of the Act prohibited making a demand on an employer for assigned wages of a wage earner unless certain requirements have been met including timely service on the employee of "a notice of intention to make the demand" (Ill. Rev. Stat. 1987, ch. 48, par. 39.2(3)). During this period of time, section 2.2 of the Act has set forth the form of the notice required by section 2 (Ill. Rev. Stat. 1987, ch. 48, par. 39.2b). Similarly, at all significant times, section 4.3(1) of the Act has provided that service of a notice on an employee "which does not conform with the requirements of [section 2.2 of the Act]" shall subject the server of the notice of liability to the employee "for statutory damages in the sum of $500 and all

actual damages occasioned by such action including reasonable attorney fees." (Ill. Rev. Stat. 1987, ch. 48, par. 39.4c(3).) The complaint alleges various times in the past five years when plaintiff has assigned wages to a defendant and received a notice of an intention by that defendant to serve a demand on that plaintiff's employer. In each case, the form of the notice allegedly sent was that set forth in section 2.2 of the Act (Ill. Rev. Stat. 1983, ch. 48, par. 39.2b), prior to an amendment by Public Act 83—867 (Pub. Act 83—867, §1, eff. Jan. 1, 1984 (1983 Ill. Laws 5608)). This form was materially different than that later required by section 2.2 of the Act.

The second question designated by the circuit court in its order of January 19, 1990, is the more serious question. We consider it first. The issue raised is whether the common questions, those applicable to all members of the class, predominate over those questions which would be individual to particular members of the class. Apparently, the parties agree that the sufficiency of the notice of intent to make demand would be a common question, as would the liability for the statutory penalty. The questions which would not be common would concern actual damages and attorney fees.

In addition to the issue of the commonality of questions which predominate over those affecting only individual members of a class, which is involved here, the other prerequisites for bringing a class action under section 2—801(2) of the Law are:

"(1) The class is so numerous that joinder of all members is impracticable.
***
(3) The representative parties will fairly and adequately protect the interest of the class.

(4) The class action is an appropriate method for the fair and efficient adjudication of the controversy." Ill. Rev. Stat. 1987, ch. 110, pars. 2—801(1), (3), (4).

The leading Illinois Supreme Court decision on this question of whether a common question satisfies the required factor of being predominant is *McCabe v. Burgess* (1979), 75 Ill. 2d 457, 389 N.E.2d 565. There, the court upheld a circuit court decision dismissing a complaint seeking to bring a class action to obtain reimbursement for all persons who had paid fines and costs in the circuit court of Champaign County pursuant to conviction under statutory provisions related to marijuana (Ill. Rev. Stat. 1969, ch. 38, pars. 22—1 through 22—49.1), which had previously been declared unconstitutional. (*People v. Mc-Cabe* (1971), 49 Ill. 2d 338, 275 N.E.2d 407.) The supreme court concluded the common question had already been resolved by its declara-

tion of the invalidity of the statute upon which the fines and costs had been collected, and the remaining issues would concern the nature of the various offenses for which the monies had been paid and the individual amounts the various persons who would be members of the class had paid. The supreme court held the circuit court had not abused its discretion in ruling that the already decided question of constitutionality was not predominant.

Prior to *Burgess*, the supreme court had decided *Ross v. City of Geneva* (1978), 71 Ill. 2d 27, 373 N.E.2d 1342. A suit had been brought in the circuit court asking the court to declare invalid a City of Geneva ordinance imposing a surcharge on commercial users of municipally supplied electricity and to permit recovery for amounts paid pursuant to the surcharge. That plaintiff requested to proceed as a class action on behalf of all those who had paid such illegal surcharges. The circuit court declared the surcharge invalid and permitted that plaintiff to recover for surcharge payments he had made but refused to permit proceeding as a class action. The Second District Appellate Court affirmed the portion of the judgment declaring the surcharge invalid but reversed the circuit court's denial of the request to permit proceeding as a class action. (*Ross v. City of Geneva* (1976), 43 Ill. App. 3d 976, 357 N.E.2d 829.) That court held the legality of the surcharge was clearly the predominant question in the case. The supreme court agreed and affirmed.

Here, defendants maintain the situation alleged is more like that in *Burgess* than that in *Ross*. This contention is based on the theory that the impropriety of defendants' notices of intention to demand wages is indisputable, making the case analogous to *Burgess*, where the invalidity of the statute upon which the fines and costs had been paid had already been decided.

■ One basis upon which defendants rely is unfounded. They point out they have filed a motion to dismiss plaintiff's complaint and note the rule that in regard to a ruling on a motion to dismiss a complaint, the allegations of the complaint are taken as true. (*Miles Homes, Inc. v. Mintjal* (1974), 17 Ill. App. 3d 642, 307 N.E.2d 724.) They then argue that the common question of the propriety of the notices stands admitted and, accordingly, is in the same position as the common question of the validity of the marijuana laws in *Burgess*. If defendants' theory is correct, the predominance and, indeed, existence of a common question upon which a request for certification of a class action is based could always be refuted by a defendant by moving to dismiss the complaint in which the request for certification is contained. The admission of the allegations of a complaint arising from a

motion to dismiss is only for the purpose of determining whether a complaint states a substantive cause of action and does not affect any other aspect of the case.

■■ More in point is defendants' explanation that section 2.2 of the Act states that the "Notice of Intent to Assign Wages" "shall be" in the form prescribed (Ill. Rev. Stat. 1987, ch. 48, par. 39.2b), and section 4.3 of the Act states that upon service of a notice not in conformity to section 2.2 of the Act, the server "shall be liable to the employee" for the statutory penalty and actual damages and attorney fees. (Ill. Rev. Stat. 1987, ch. 48, par. 39.4c.) The portion of section 4.3 of the Act providing for liability for a nonconforming notice was part of legislation which also changed section 2.2 of the Act to state that the notice described there "shall be" in the form shown. (Pub. Act 83—867, §1, eff. Jan. 1, 1984 (1983 Ill. Laws 5608).) Prior to that time, section 4.3 of "An Act to promote the welfare of wage-earners by regulating the assignment of wages ***" (Act) (Ill. Rev. Stat 1981, ch. 48, par. 39.4c) made no mention of liability of an employer in regard to an improper "Notice of Intent to Assign Wages" and section 2.2 of the Act merely required that notice "shall be in *substantially*" the form then prescribed. (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 48, par. 39.2b.) The foregoing legal history does indicate absolute liability for failure to give notice in the form required.

Because of the absolute nature of the liability involved here, the common question would be one of easy decision and would not seem to predominate a case brought under section 4.3 of the Act. However, most other questions in such a case would not be very difficult either. Each party suing would have to prove that a notice, not in the statutory form, was sent to that party. Once that was proved, that party would be entitled to statutory damages in the sum of $500 for each improper notice sent. The question of whether such a party was also entitled to additional compensatory damages would require different proof in each case and would seem to be the issue which would predominate in each case in regard to the time involved and the difficulty of proof.

In *Gutansky v. Advance Mortgage Corp.* (1981), 102 Ill. App. 3d 496, 430 N.E.2d 122, under circumstances analogous to those here, the First District Appellate Court held that permitting a case to proceed as a class action would have been reversible error as a matter of law. Statutory provisions required mortgagees of real estate to execute and file for record releases of mortgages upon satisfaction of the underlying indebtedness. (Ill. Rev. Stat. 1977, ch. 95, par. 52.) If the foregoing was not accomplished within 30 days of satisfaction of the

indebtedness, the mortgagees were stated to be liable to the mortgagors for $200 and a reasonable attorney fee in civil actions. (Ill. Rev. Stat. 1977, ch. 95, par. 54.) Comortgagors brought suit against a financial institution contending that defendant had failed to make a timely release of the mortgage after they paid off the underlying indebtedness. Those plaintiffs sought to proceed in a class action on behalf of themselves and others similarly situated. The circuit court permitted those plaintiffs to proceed individually but refused to certify the case as a class action.

On ultimate appeal, the *Gutansky* court concluded the circuit court had refused to certify the case as a class action because that court felt a class action could not be brought to recover a statutory penalty. The appellate court held the circuit court was wrong in its reasoning but, nevertheless, the appellate court affirmed. It held that under the legislation concerning mortgage releases, the right of parties similarly situated to those plaintiffs to recover under the statute was "settled beyond doubt" just as were the rights of those convicted of marijuana offenses in *Burgess*. (*Gutansky*, 102 Ill. App. 3d at 501, 430 N.E.2d at 126.) Accordingly, the *Gutansky* court determined the case presented no predominant common question and failed as a matter of law to qualify for class-action status.

■ Here, as in *Gutansky*, the suit concerns violation of a remedial statute providing for a penalty. The validity of the statute is not in doubt, and the right of persons protected under the statute to proceed upon easy proof of a statutory violation is clear. *Gutansky* presented a stronger case for a class action than the instant case, because here, in addition to recovery of the statutory penalty, which is provided for upon showing a statutory violation, the issue of compensatory damages is present. That issue can only be determined on an individual basis as to each person injured by a statutory violation. We recognize that the existence of individual questions does not necessarily defeat a class action if a common predominant question of law or fact exists. (*Miner v. Gillette Co.* (1981), 87 Ill. 2d 7, 428 N.E.2d 478.) However, when an individual question does exist which is more time consuming and more difficult to prove than the common question which is readily proved, that situation tends to negate the predominant status of the common question.

Plaintiff sought in the complaint to avoid the issue of compensatory damages by not requesting those damages for any class member. She argues that few people would be able to prove compensatory damages and maintains those wishing to raise that issue could request to not be included in the class pursuant to section 2—804(b) of the

Law (Ill. Rev. Stat. 1989, ch. 110, par. 2—804(b)). That provision permits a class member to be excluded upon request. While such action could be taken, the fact that those who wish to raise any issue of substance in the case would likely not be included in the class negates the need or desirability of creating a class action.

The instant case is clearly distinguishable from *Ross*, where the validity of a municipal ordinance was a substantial question of some doubt. Justice Underwood dissented from the supreme court decision there on the basis that the invalidity of the ordinance was not shown. There, that question was clearly common to all class members and predominated. Thus, the only issue subject to individual decision was the calculation of how much each person who had paid the surcharge in question was to be reimbursed.

In addition to *Ross*, plaintiff also relies upon *Gulish v. United States* (W.D. Pa. 1978), 78 F.R.D. 515. *Gulish* was also discussed by the supreme court in *Burgess*. In *Gulish*, the case had been remanded to the Federal district court by the decision in *Neely v. United States* (3d Cir. 1976), 546 F.2d 1059. Initially, the district court had dismissed a complaint seeking a class action on behalf of individuals convicted and fined under Federal wagering-tax statutes seeking annulment of the convictions of all class members and return of the fines and costs they had paid. The district court dismissed the complaint on the basis that a class action would be unmanageable. The taxing statute had previously been held unconstitutional, and the *Neely* decision determined the district court had authority under the Tucker Act (see 28 U.S.C. §1346 (1970)), to order return of fines and costs paid under unconstitutional convictions. The *Neely* decision then requested the district court to determine the manageability of a class action.

On remand, the *Gulish* court found a manageable class action could include only a class of members residing in that district. The court deemed the issue of a predominate common question was interwoven with the issue of manageability. The court did allow a class action to be brought even though, at that stage, the common question of the invalidity of the statute upon which convictions had been obtained had been decided as well as the right to those wrongly convicted to the return of fine and costs. The supreme court considered this in its decision in *Burgess* but distinguished the case on the basis that there the question of whether the possible class members were entitled to refunds had not been decided when the case originated. In effect, the supreme court concluded that the issue of a predominant common question must be viewed in the light of the existence of that issue when the proceeding was initiated. In *Gulish*, the question of

the general right to reimbursement was an uncertain issue. In *Burgess*, that question had been fully decided. Here, and in *Gutansky*, the question of whether persons whose statutory rights were violated had a cause of action was "settled beyond doubt," when the case was filed.

Because the Act is remedial in nature, plaintiff maintains public policy will be promoted by favoring class actions to enforce its provisions. She reasons that by doing so courts will encourage the filing of such actions under circumstances where the amount any one individual might recover is too small to support such an action. She contends this case presents such a situation, partly because no individual harmed is likely to be able to prove substantial compensatory damages. In support of her argument she cites *Vickers v. Home Federal Savings & Loan Association* (N.Y. Sup. Ct. 1976), 87 Misc. 2d 880, 386 N.Y.S.2d 291, where a suit was brought in a New York trial court for recovery under Federal legislation, the Consumer Credit Protection Act, generally known as the Truth In Lending Act (TIL) (see 15 U.S.C. §1601 *et seq.* (1982)). That court permitted a class action to be brought in that case.

In support of its decision, the *Vickers* court, in discussing language of Senator Hart who, in regard to an amendment to TIL deemed to authorize class actions under TIL, stated:

" 'The actual damages,' he pointed out, 'resulting from abuses of disclosure, billing practices, and discrimination are usually negligible or extremely difficult to prove. For that reason, we set up a minimum award of $100 for an individual action in our original act. But lawyers' fees and the costs of suit are such that the only truly effective means of enforcing the sound provisions of this act is by class suits ...[.]

[ ]... The object in this type of class suit is not so much to compensate the injured party, but to give an economic incentive to companies for compliance with the law.[']" *Vickers*, 87 Misc. 2d at ___, 386 N.Y.S.2d at 295, quoting 119 Cong. Rec. 25,414, 25,419 (1973) (statements of Senator Hart).

The *Vickers* opinion stated that the fact one plaintiff may be entitled to more relief than another did not negate proceeding as a class action. However, the common questions had substance. Moreover, the theory that litigation under TIL should be encouraged was stated within the context of language of TIL, which limited total recovery in the class action to the lesser of $100,000 or 1% of the defendant's net worth. (15 U.S.C. §1640(a)(2)(B) (1982).) Here, neither the Law nor the Act places any limitation upon total recovery in a class action.

Plaintiff's complaint alleges as many as 1,000 persons may be entitled to the $500 penalty provided for by section 4.3(1) of the Act.

■■■ We do not interpret *Burgess* as a decision intended to apply only under the circumstances where the common question is the validity of legislation which has already been declared invalid. We agree with *Gutansky* that *Burgess* is applicable when the common question has been "settled beyond a doubt." Under such circumstances, the common question cannot predominate. While the *Burgess* court recognized the discretion vested in the trial court and, there, affirmed a trial court ruling, we also agree with *Gutansky* that when common questions fail to "predominate" over other questions, the grounds for a class action fail as a matter of law. While the *Vickers* court indicated that promotion of class actions under TIL with its safeguards should be encouraged, we do not deem public policy to encourage class litigation here. The circuit court of Champaign County could have handled a class action in *Burgess*, and the circuit court of Macon County could handle one here. However, in neither case would any substantial saving in efficiency occur, because neither case presents any substantial question of proof which would apply to all cases.

■■ We find no merit in defendant's contention the circuit court's order of January 8, 1990, was inadequate.

Section 2—802(a) of the Law states:

"Order and findings relative to the class. (a) Determination of Class. As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it may be so maintained and describe those whom the court finds to be members of the class. This order may be conditional and may be amended before a decision on the merits." (Ill. Rev. Stat. 1989, ch. 110, par. 2—802(a).)

That order met those requirements. No special findings were necessary. Furthermore, any deficiency, if called to the circuit court's attention, could be corrected by amendment.

■■ Because of the lack of allegation of any "predominant" common questions in the complaint, we reverse the order of January 8, 1990, to the extent it provided for a class action and to the extent the order denied dismissal of the class action aspects of the complaint. We remand the cause to the circuit court of Macon County for further proceedings.

Reversed and remanded with directions.

LUND and McCULLOUGH, JJ., concur.