Ronnie WATKINS, Plaintiff-Appellant,

v.

SIMMONS AND CLARK, INC.,
Defendant-Appellee.

No. 77–1516.

United States Court of Appeals,
Sixth Circuit.

Cause Argued June 18, 1979.

Decided and Filed Jan. 8, 1980.

Rehearing and Rehearing En Banc
Denied March 24, 1980.

David W. Sinclair, Anthony Lutostanski, Detroit, Mich., for plaintiff-appellant.

Steven A. Siman, Troy, Mich., Clark, Hardy, Lewis, Fine & Asher, Thomas Hardy, Birmingham, Mich., for defendant-appellee.

Before EDWARDS, Chief Judge, KEITH and BROWN, Circuit Judges.[*]

KEITH, Circuit Judge.

On December 26, 1975, appellant, Ronnie Watkins, purchased a diamond ring on an installment basis from Simmons & Clark, Inc.,[1] at a cost of $249.00. On January 22, 1976, Watkins filed the present action in federal district court alleging that the retail credit sales contract which he was required to sign in connection with the purchase did

---

[*] The Honorable Bailey Brown, was Chief Judge, United States District Court for the Western District of Tennessee, sitting by designation, when oral argument was heard.

1. Simmons & Clark is a Michigan Corporation engaged in the retail sale of watches, jewelry, small household appliances, and other related items.

not comply with the disclosure requirements of the Federal-Truth-in-Lending Act, 15 U.S.C. §§ 1601 *et seq.,* and Federal Reserve Regulation Z, 12 C.F.R. § 226 *et seq.,* promulgated pursuant to the Act.

In addition to himself, Watkins sought to represent a class estimated to consist of approximately 1,000 other purchasers, each of whom had entered into retail credit transactions with Simmons & Clark in which the same credit sales form was used.

The district court decided the case on cross-motions for summary judgment and on appellant's motion to certify the matter as a class action under Rule 23 of the Federal Rules of Civil Procedure. While the district court found in favor of appellant on the merits, it refused to certify the class, holding, *inter alia,* that in the circumstances of this case, "the class action is not superior to other available methods of adjudication, and therefore even if compliance with the prerequisites of Rule 23(a) could arguably be shown here, the case does not satisfy the requirements of 23(b)." [2] Plaintiff appeals, claiming that the court abused its discretion in refusing to certify the class. We affirm Judge Philip Pratt.

## I

Since its original enactment in 1968, Section 130 of the Truth-in-Lending Act, 15 U.S.C. § 1640,[3] has permitted consumers to bring civil actions against creditors who fail to disclose the information required by the Act or the accompanying regulations. The Act permits a party who establishes a violation but fails to prove any actual monetary damages resulting therefrom to collect court costs and reasonable attorney's fees, plus twice the amount of the finance charge, but not less than $100.00 nor more than $1,000.00.

The clear purpose of this statutorily mandated minimum recovery was to encourage lawsuits by individual consumers as a means of enforcing creditor compliance with the Act. However, as originally enacted in 1968, § 1640(a) made no specific provision for class actions.

Because of the potentially devastating impact that the statutorily mandated minimum recovery could have on creditors, courts were initially reluctant to certify class actions for Truth-in-Lending Act violations. *See Ratner v. Chemical Bank,* 329 F.Supp. 270; 54 F.R.D. 412, 414, 416 (S.D.N.Y.1972); *Rogers v. Coburn Finance Corp. of Dekalb,* 54 F.R.D. 417, 419 (N.D.Ga.1972); *Shields v. First National Bank of Arizona,* 56 F.R.D. 442, 446 (D.Ariz.1972); *Shields v. Valley National Bank of Arizona,* 56 F.R.D. 448 (D.Ariz.1972); *Wilcox v. Commerce Bank,* 55 F.R.D. 134, 138 (D.Kan.1972); *Kriger v. European Health Spa,* 56 F.R.D. 104, 106 (E.D.Wis.1972); *Buford v. American Finance Co.,* 333 F.Supp. 1243, 1251 (N.D.Ga.

---

**2.** Fed.R.Civ.Pro. 23(a) requires that (1) the class be so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the class. The pertinent requirement of 23(b) is that contained in 23(b)(3): the court must find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and *that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.* (emphasis added)

**3.** Section 1640, originally enacted in 1968, provided in pertinent part:

(a) Except as otherwise provided in this section, any creditor who fails in connection with any consumer credit transaction to disclose to any person any information required under this part to be disclosed to that person is liable to such person in an amount equal to the sum of

(1) twice the amount of the finance charge in connection with the transaction, except that the liability under this paragraph shall not be less than $100 nor greater than $1,000; and

(2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with a reasonable attorney's fee as determined by the court.

\*     \*     \*     \*     \*     \*

(e) Jurisdiction: Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation.

\*     \*     \*     \*     \*     \*

Pub.L. 90–321, Title I, § 130, May 29, 1968, 82 Stat. 157.

1971). As a rationale for avoiding class certification, the vast majority of courts, particularly where the plaintiff had sustained no monetary damages, concluded that a class action was not "superior to other available methods for the fair and efficient adjudication of the controversy," Rule 23(b)(3), F.R.C.Pro.[4]

In 1974, however, Congress amended the Act by adding the following subsections to § 1640(a):

"(2)(B) in the case of a class action, such amount as the court may allow, except that as to each member of the class no minimum recovery shall be applicable, and the total recovery in such action shall not be more than the lesser of $500,000 or 1 percentum of the net worth of the creditor; and

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. In determining the amount of award in any class action, the court shall consider, among other relevant factors, the amount of any actual damages awarded, the frequency and persistence of failures of compliance by the creditor, the resources of the creditor, the number of persons adversely affected, and the extent to which the creditor's failure of compliance was intentional."

In 1976, Congress again amended Section 1640 to raise the maximum dollar ceiling on class action recoveries from $100,000 to $500,000.[5]

The legislative history of the 1974 amendment reveals that Congress acted to counter the manifest judicial unwillingness to impose class liability under the Act. Indeed, it appears that Congress felt constrained to encourage class actions in the truth-in-lending context because of the apparent inadequacy of the Federal Trade Commission's enforcement resources and because of a continuing problem of minimal voluntary compliance with the Act on the part of creditors.[6]

---

**4.** As the court summarized in *Shields, supra*: "Recent cases have . . . emphasized the impact of suits such as this one on corporations charged under the Act. Where an industry may possibly suffer 'a horrendous, possibly annihilating punishment, unrelated to any damage to the purported class or to any benefit to defendant, for what is at most a technical and debatable violation of the Truth in Lending Act,' several courts have recently found that a class action is not 'superior to' other alternatives and does not 'achieve economies of time, effort and expenses, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.' *Wilcox v. Commerce Bank, supra; Shields v. Valley National Bank, supra; Rogers v. Coburn Finance Corp. of Dekalb, supra; Ratner v. Chemical Bank New York Trust Co., supra; Buford v. American Finance Co., supra*; Amendments to Rules of Civil Procedure, Advisory Committee's Notes, 39 F.R.D. 69, 103 (1966); *See Gerlach v. Allstate Insurance Co.*, 338 F.Supp. 642 (S.D.Fla.1972)." 56 F.R.D. at 446. It bears noting, however, that not all of the earlier decisions denied class certification in the Truth-in-Lending Act context. *See Katz v. Carte Blanche Corp.*, 52 F.R.D. 510, 53 F.R.D. 539 (W.D.Pa.1971); *Joseph v. Norman Health Club, Inc.*, 336 F.Supp. 307 (E.D.Mo.1971).

**5.** 15 U.S.C. § 1640 (as amended Pub.L. 94–222, § 3(b), 90 Stat. 197, Mar. 23, 1976, P.L. 94–240).

**6.** The Report of the Senate Committee on Banking, Housing and Urban Affairs of June 28, 1973, (legislative date is June 25, 1973), Truth in Lending Act Amendments, contains a cogent analysis of then-proposed changes in the Act which were ultimately adopted in 1974. The report states:

A problem has arisen in applying [the applicable individual suits'] minimum liability provisions in class action suits involving millions of consumers. If each member of the class is entitled to a minimum award of $100 a creditor's liability can be enormous. For example, if a large national department store chain with 10 million customers fails to include a required item of information on its monthly billing statement, it can be subject to a minimum liability of $1 billion in a class action suit.

The leading case in construing the applicability of the minimum liability provisions under section 130 to class action suits is *Ratner v. Chemical Bank New York Trust Co.* [citation omitted] In the *Ratner* case, Judge Frankel decided that the action by one cardholder would not lie as a class action, stating that, "The allowance of thousands of minimum recoveries like plaintiff's would carry to an absurd and stultifying extreme the specific and essentially inconsistent remedy Congress

The legislative history behind the 1976 amendment increasing the maximum dollar ceiling recovery in particular makes clear that Congress wished to encourage Truth-in-Lending class actions:

The setting of *any* ceiling on class action liability is meant to limit the exposure of creditors to vast judgments whose size would depend on the number of members who happened to fall within the class. The *risk* of any ceiling on class action recoveries is that, if it is too low, it acts as a positive disincentive to the bringing of such actions and thus frustrates the enforcement policy for which class actions are recognized. Under the present Truth in Lending Act, where the class action ceiling is $100,000, several courts have noted the incompatibility of that ceiling with the effective use of the class action device. *Boggs v. Alto Trailer Sales, Inc.* (No. 74–1605, 5th Cir., April

14, 1975); *Weathersby v. Fireside Thrift Co.,* (No. 73–0563 AJZ, N.D.Calif., Feb. 25, 1975). The Committee wishes to avoid any implication that the ceiling on class action recovery is meant to discourage use of the class action device. The recommended $500,000 limit, coupled with the 1% formula, provides, we believe, a workable structure for private enforcement. Small businesses are protected by the 1% measure, while a potential half million dollar recovery ought to act as a significant deterrent to even the largest creditor. Creditors are also protected by the list of factors a court should consider in determining any class action award.[7]

Congress has clearly provided for and tried in encourage class action suits under the Truth-in-Lending Act. In so doing, it has carefully circumscribed such actions so as to insure that they are not overly bur-

---

prescribed as the means of private enforcement." In refusing to maintain the *Ratner* case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, the court also emphasized that it was not ruling on the defendant's more sweeping contentions that no class actions were authorized under section 130 of the Truth in Lending Act.

Prior to the *Ratner* decision on February 14, 1972, the courts affirmed 8 Truth in Lending suits as class actions while denying class action status to 3. Since the *Ratner* case, the courts denied 21 Truth in Lending suits class action status while affirming only one and in that case only after the plaintiffs amended their complaint to sue only for actual damages. Despite this record, many creditors fear a future court may still certify a Truth in Lending suit for class action status and subject the creditor involved to a potentially staggering penalty.

At the same time, it is clear that consumers have not obtained much relief because of the court's reluctance to impose the unreasonably large minimum penalties provided for under section 130 of the Truth in Lending Act. *The purpose of the civil penalties section under Truth in Lending was to provide creditors with a meaningful incentive to comply with the law without relying upon an extensive new bureaucracy. However, the Committee feels this objective can be achieved without subjecting creditors to enormous penalties for violations which do not involve actual damages and may be of a technical nature. Putting a reasonable limit on a creditor's maximum class action liability would*

*seem to be in the best interests of both creditors and consumers.* (emphasis added)

In reviewing alternative solutions to the problem, the Committee considered a proposal to leave the present law unchanged. This approach was advocated by the finance company industry on the theory that class action suits under Truth in Lending other than for actual damages were inappropriate, were not specifically authorized by The Truth in Lending Act, and would be ultimately held to be illegal per se by the courts.

This approach was not approved by the Committee. The Committee believes the present ambiguities and uncertainties with respect to class action suits under Truth in Lending should be clarified. Moreover, *the Committee agrees with the Federal Reserve Board that "potential class action liability is an important encouragement to the voluntary compliance which is so necessary to insure nation-wide adherence to uniform disclosure"* and that such remedies should not be restricted to actual damages. (emphasis added) As the Committee pointed out in its report on similar legislation last year, "Most Truth in Lending violations do not involve actual damages and . . . some meaningful penalty provisions are therefore needed to insure compliance."

Senate Report No. 93–278, pp. 14–15.

7. Banking, Housing and Urban Affairs Committee's Senate Report on P.L. 94–240, Senate Report No. 94–590 *reprinted in* 1976 U.S.Code Cong. and Admin.News, pp. 431, 438.

densome on small creditors and yet, at the same time, sufficiently potent to police large concerns.

■ Review of the legislative history surrounding these amendments convinces us that Congress did intend, by them, to encourage class actions and to use the threat of class action recoveries to force compliance with the Act. The fact that courts have recognized this congressional policy is reflected in the dramatic reversal of the judicial trend against the certification of classes in Truth-in-Lending actions. *See Goldman v. First National Bank of Chicago*, 532 F.2d 10 (7th Cir.), *cert. denied*, 429 U.S. 870, 97 S.Ct. 183, 50 L.Ed.2d 150 (1976); *Redhouse v. Quality Ford*, 523 F.2d 1 (10th Cir. 1975); *Boggs v. Alto Trailer Sales, Inc.*, 511 F.2d 114 (5th Cir. 1975); *Agostine v. Sidcon Corp.*, 69 F.R.D. 437 (D.D.Pa.1975); *Postow v. Oriental Building Assn.*, 390 F.Supp. 1130 (D.C.1976); *Eovaldi v. First National Bank of Chicago*, 71 F.R.D. 334 (N.D.Ill.1976); *Chevalier v. Baind Savings Association, Inc.*, 72 F.R.D. 140 (E.D.Pa. 1976); *Vickers v. Federal Savings and Loan Association of East Rochester*, 87 Misc.2d 880, 386 N.Y.S.2d 291 (1976); *Kaminski v. Shamut Credit Union*, 416 F.Supp. 1119 (D.Mass.1976).

## II

Congress did not intend by the 1974 and 1976 amendments, to make the certification of class actions mandatory in every Truth-in-Lending lawsuit. Courts which have considered the question have properly recognized the permissive rather than mandatory nature of class actions and that the determination of whether to certify a class in the Truth-in-Lending context is still to be made on a case-by-case basis, bearing in mind the traditional prerequisites found in 23(a) and (b). *See Boggs v. Alto Trailer Sales, Inc.*, 511 F.2d 114 (5th Cir. 1975); *Haynes v. Logan Furniture Mart, Inc.*, 503

F.2d 1161 (7th Cir. 1974). The question before us, then, is whether the district court abused its discretion in refusing to certify the class.

In determining whether or not to certify a class action, a court must be guided by Rule 23. And while "[s]tudents of the Rule have been led generally to recognize that its broad and open-ended terms call for the exercise of some considerable discretion of a pragmatic nature," *Ratner, supra*, at 416, that discretion must often be limited by considerations in addition to those set forth in the Rule. As this Court has stated:

"Discretion in a legal sense necessarily is the responsible exercise of official conscience on all the facts of the purpose for which the power exists. *Bowles v. Goebel*, 151 F.2d 671, 674 (8th Cir. 1945). Thus in determining the proper scope of the exercise of discretion, the objective sought to be accomplished by the statute must be given great weight. *Hecht Co. v. Bowles*, 321 U.S. 321, 331, 64 S.Ct. 587, 88 L.Ed. 754 (1944). Where a district court fails to exercise discretion with an eye to the purposes of the Act, it must be reversed. *Wirtz v. B. B. Saxon Co.*, 365 F.2d 457, [17 WH cases 415] (5th Cir. 1966); *Shultz v. Parke*, 413 F.2d 1364, [19 WH cases 72] (5th Cir. 1969)."

*Head v. Timken Roller Bearing Co.*, 486 F.2d 870, 876–77 (6th Cir. 1973) (citations omitted). *See Goldman v. First National Bank of Chicago*, 532 F.2d 10, 16 (7th Cir.), *cert. denied*, 429 U.S. 870, 97 S.Ct. 183, 50 L.Ed.2d 150 (1976). *Cf. United States v. Work Wear Corp.*, 602 F.2d 110 (6th Cir. 1979). We feel that the district court met this standard in this court.

■ After plaintiff won on the merits, Simmons & Clark submitted a revised installment sales contract to the court which was in compliance with the Act.[8] In light of this fact, the district court held that a

---

8. However, we note that if, in every proposed class action, the noncomplying creditor can escape class liability by virtue of a judgment in favor of one party, the congressional purpose of using the threat of a class action to force compliance with the Act is all but completely nullified. In other words, the prophylactic effect of class liability exposure prompting creditors to comply with the Act without the necessity of suit being brought could be, if this approach prevails, nonexistent.

class action was not necessary in the instant case to force the creditor to comply with the Act because plaintiff's individual suit had already accomplished this result.[9]

The court below was also greatly influenced in its decision to deny certification by its characterization of the violations in this case as mere technical violations,[10] and by the fact that no actual damages were alleged or shown. The court stated that "If the purpose of the Act (and the 1974 Amendment) in these cases of technical violations with no actual damages was to secure compliance with the Act's disclosure requirements rather than to punish the unheeding violator, then this Court believes maintenance of the class action (at least at this time) is an unnecessary overreaction to the violation here." We agree that on the facts of this case, this judgment by the district court did not constitute an abuse of discretion.

We are aware that Congress did not distinguish technical violations from the more egregious violations in fashioning the class action remedy, except to permit recovery of actual damages of up to $500,000 in the latter cases. A Report of the Senate Committee which issued the amending bill makes clear that Congress intended that the threat of "class liability" should serve to induce compliance with the Act even in cases where the violations are merely technical, involving no actual damages. The Committee noted that " 'Most Truth-in-Lending violations do not involve actual damages and some meaningful penalty provisions are therefore needed to insure compliance.' "[11]

We are also aware that the technical nature of the violations may well argue in favor of the appropriateness of the class action here. Precisely because the viola-

---

**9.** The court below also stated that its finding that the credit form used by Simmons & Clark violated the Act "goes a considerable way toward overcoming any reluctance on the part of other customers to bring suit under the Truth-in-Lending Act."

This overlooks the fact that there may be individual debtors who are aware of their creditors' violations but have serious reservations about initiating a lawsuit for fear of retaliation. As the 7th Circuit noted in a pre-1974 amendment case:

" . . . no particular perceptiveness of modern society is needed for an awareness of a fact of life lying in the virtually perpetual monthly payment program of many families. As balances owing decline new purchases occur. The individual if aware at all of his claim under the Act is bound to have some reluctance to sue in his own name the supplier with whom he continues to do business and one who could be in a position to visit harsh remedies on the buyer in the event of a subsequent default."

*Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d at 1161–1165 (1974).

Moreover, the class action is a superior device to numerous individual actions because it will not preclude relief for those individuals on whose claims the statute of limitations has run. *See Neeley v. United States*, 546 F.2d 1059, 1071 (10th Cir. 1976). *Jones v. Diamond*, 519 F.2d 1090, 1100 (5th Cir. 1975); *Blackie v. Bannack*, 524 F.2d 891 (9th Cir. 1975); *Samuel v. University of Pittsburgh*, 538 F.2d 991 (3rd Cir. 1976); *Dolgow v. Anderson*, 43 F.R.D. 472, 481 (E.D.N.Y.1968).

**10.** The violations of the Act found by the District Court related to failure of the defendant to use required terminology in its financing statement: 1) The defendant used the term "(Trade In) Down Payment" instead of "cash downpayment" (denoting cash) and "trade in" (denoting a down payment in property, if any), as required by regulation Z, 12 C.F.R. § 226.8(c)(2); 2) The defendant used the term "principle balance" rather than "unpaid balance of cash price" as required by regulation Z, 12 C.F.R. § 226.8(c)(3); 3) The defendant used the term "total time sales price" rather than "deferred payment price" as required by regulation Z, 12 C.R.F. § 226.8(c)(8); 4) The contract, while containing a line stating that terms were $20.00 per week, did not state how many weeks payments were to run before the balance was paid off. *See* 12 C.F.R. § 226.8(b)(3). Of these four violations found by the district court, only the last even arguably might have had an effect on the buyer. However, unlike the first three violations which were contained on the printed form, the fourth violation arose from a failure of a store employee to write out the needed term. This failure is unique to the plaintiff and he never claimed that it had any effect on his decision to buy the ring.

At oral argument before the district court, on motions for summary judgment, counsel for the plaintiff conceded that "the violations we claim are technical."

**11.** *See* n. 6, *supra*.

tions are technical, as appellant notes, most of the members of the consumer class will not be aware of them unless they should encounter a practicing attorney versed in the Act. The superiority of the class action in these circumstances lies in the fact that the class members may share in a financial recovery which, otherwise, they would never pursue on their own behalf because of ignorance.

Additionally, the class action provides an opportunity to educate a segment of the public, those included in the class, of the obligations which creditors owe to them as credit consumers. This mass awakening of awareness could, indeed, be the greatest single benefit derived in an area of regulation in which the responsibility of policing falls principally on the shoulders of the private citizen and private counsel.

There are persuasive arguments which favor class certification even in cases involving technical violations. Were the certification issue before us de novo we may very well have certified the class. However, we cannot find an abuse of discretion on this record. Unlike *Goldman v. First National Bank of Chicago, supra* and *Haynes v. Logan Furniture Mart, supra,* the violations here were all technical and no claim was made that the violations influenced the plaintiff in his decision to buy the ring on an installment basis. The defendant is a small store and this was the first time that a truth-in-lending violation had been brought to its attention. It moved quickly after suit was filed to bring its installment contracts into compliance with the Act. This is an extreme case. Were we to order class-certification here, as a practical matter, class certification would be required in all cases. This would effectively negate the discretion of a district court to certify a class.

We wish to state that class certification is desirable and should be encouraged. Where the requirements of F.R.Civ.Pro. 23(a) have been met, class certification should be denied only in a case involving technical violations and only where the district court, in the exercise of discretion, believes that certification is unwarranted. On the facts of this case, we can see no abuse of discretion.

The judgment of the district court is affirmed.[12] Each party is to bear its own costs.

Before EDWARDS, Chief Judge, and KEITH and BROWN, Circuit Judges.

### ORDER

No members of this court having voted in favor of en banc reconsideration, the petition for rehearing has been referred to the hearing panel for disposition.

We see no reason to reconsider our opinion. Contrary to the allegations made in the petition for rehearing, we were not overly moved by solicitude for the defendant. The plaintiff characterizes the defendant as a profiteering huckster of overpriced junk jewelry to unsuspecting poor people. Even assuming this is true, the defendant was guilty of only technical truth-in-lending violations. We simply see no abuse of discretion by the district court in denying class certification.

The petition for rehearing is denied.

---

**12.** Appellee's counsel informed the Court in its brief and at oral argument that Watkins has failed to make any of the payments required on the purchase and has absented himself from the jurisdiction of the district court. At oral argument, counsel suggested that Simmons & Clark should be permitted to offset the unpaid balance due on the purchase against any recovery to which Watkins becomes entitled by virtue of this lawsuit.

A setoff is specifically provided for in 15 U.S.C. § 1640(h) but only if the consumer's debt has been reduced to judgment. *See Plant v. Blazer Financial Services Inc. of Georgia,* 598 F.2d 1357 (5th Cir. 1979) (under F.R.Civ.Pro. 13(a) setoff of a debt is a compulsory counterclaim to a truth in lending action). In this case, however, no counterclaim was filed in the district court and the set-off issue was raised for the first time on appeal.