Dolores DURAN, Lumberto Ramirez, Genaro Miranda and Cecia Miranda, Plaintiffs,

v.

CREDIT BUREAU OF YUMA, INC., Defendant.

No. CIV 81–863 PHX CLH.

United States District Court, D. Arizona.

March 11, 1982.

Kenneth L. Schorr, Phoenix, Ariz., W. Patrick Schiffer, Yuma, Ariz., for plaintiffs.

Richard A. Segal, Phoenix, Ariz., for defendant.

## MEMORANDUM OPINION AND ORDER

HARDY, District Judge.

On November 17, 1981, the Court entered an order which (1) granted defendant's motion to deny class certification pursuant to Rule 23(b)(2), (2) denied the motion to deny class certification pursuant to Rule 23(b)(3), (3) denied plaintiffs' motion to compel discovery as being overly broad, and (4) required the defendant to provide the Court with certain information under oath for the purpose of assisting the Court in a determination of whether a Rule 23(b)(3) class action would be a superior type of proceeding. The parties were also directed to file memoranda on the issue.

1.  15 U.S.C. § 1692k(a).

2.  15 U.S.C. § 1692*l.*

3.  See S.Rep.No.589, 94th Cong., 2d Sess. 1, 13, *reprinted in* [1976] U.S.Code Cong. and Ad. News 403, 415.

The defendant's memorandum urges that superiority is not demonstrated because individual liability issues preclude a finding of common factual or legal issues. As will be discussed below, this argument is without merit.

The plaintiffs' memorandum not only addresses the issue of superiority but asks the Court to reconsider its ruling that it was without jurisdiction to authorize a Rule 23(b)(2) class action and to grant the motion to compel. The Court finds both plaintiffs' arguments unpersuasive. However, the Court has concluded that a Rule 23(b)(3) class action is superior and that it is appropriate to certify a class at this time.

### INAPPROPRIATENESS OF RULE 23(b)(2) CLASS ACTION

The Court adheres to its view that it is without jurisdiction to grant injunctive relief to a consumer aggrieved by a debt collector's failure to comply with the requirements of the Fair Debt Collection Practices Act (FDCPA). That view is supported by the language of the FDCPA, which provides that a debt collector who fails to comply with the Act shall be liable for an "amount,"[1] and which authorizes only federal agencies to enforce compliance with the Act;[2] by the Act's legislative history[3]; by a comparison of the Act with other consumer protection statutes[4] and cases which have specifically ruled that comparable civil liability or enforcement provisions should be narrowly construed. *See Jordan v. Montgomery Ward & Company*, 442 F.2d 78 (8th Cir. 1971) (Truth in Lending Act); *Kekich v. Travelers Indemnity Co.*, 64 F.R.D. 660 (W.D.Pa.1974) (Fair Credit Reporting Act). *Accord Michaelson v. Motwani*, 372 So.2d 726 (La.App.1979). Language in *Jordan* is particularly apt:

... [T]he civil penalty section creates a statutory remedy and confers jurisdiction on the district courts for actions brought

4.  Truth in Lending Act, 15 U.S.C. §§ 1601 to 1666j, Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681t, and Equal Credit Opportunity Act, 15 U.S.C. §§ 1691–1691e, the only one of these statutes which specifically authorizes an aggrieved consumer to seek injunctive relief.

thereunder. But this section is limited in its scope and application. We cannot extend either the ambit of the remedy so created or the jurisdiction of the district courts established by Congress in the Truth in Lending Act. It is well established that courts may not enlarge by construction the language of a clear and unambiguous statute. (citation omitted) 442 F.2d at 81–82.

While a few cases have granted injunctive relief to compel enforcement of consumer protection statutes, it does not appear in any of them that the jurisdictional issue was raised.[5]

■ In any event, Rule 23(b)(2) is available only where injunctive or declaratory relief is the primary reason for bringing the action and is not subordinate to a damage claim.[6]

■ The first amended complaint prays for an award of actual damages, punitive damages, and liquidated damages authorized by the FDCPA to each of the main plaintiffs and to each member of the plaintiff class. It is obvious to the Court that the predominant reason for instituting this action is the recovery of damages.

## APPROPRIATENESS OF RULE 23(b)(3) CLASS ACTION

■ The determination of whether class action treatment is appropriate in this case involves an eight step analysis.

First, is there a class? Broadly, there is a class consisting of all persons from whom defendant has collected or attempted to collect debts by acts or omissions which violate the FDCPA. More narrowly, as is discussed below, there is a class consisting of all persons from whom the defendant has collect-

ed or attempted to collect a collection fee since July 22, 1980, where the amount of the fee was not expressly authorized by the agreement creating the debt.

Second, are plaintiffs members of the class? Plaintiffs' allegations in their amended complaint show they are.

■ Third, is the class so numerous that joinder of all members is impracticable? An affidavit by defendant's President in response to the Court's order of November 17 states that from July 23, 1980 to November 1, 1981 defendant collected 105 accounts in which a fee was either collected or a judgment including a collection fee was obtained. That number is sufficient to establish impracticability of joinder.

Fourth, are there questions of law or fact common to the class? There is at least one question of fact common to the class: whether defendant has collected a collection fee not expressly authorized by the agreement creating the debt. There is also at least one question of law common to the class: whether a consumer's promise in an agreement to pay "such collection costs . . . as may be required to affect collection of this note" is an amount expressly authorized by the agreement creating the debt as required by 15 U.S.C. § 1692f(1). That language appears in contracts between Dr. Arbaje and his patients which have been turned over to defendant for collection. Presumably, comparable language may be found in other contracts turned over to defendant for collection.[7]

Fifth, do common questions of law or fact predominate? Since "the core of Plaintiffs' case is that the Defendant routinely collects an excessive collection fee",[8] the common issues of fact or law set forth above predominate.

**5.** See *Ives v. W. T. Grant Co.*, 522 F.2d 749 (2nd Cir. 1975); *Greenway v. Information Dynamics, Ltd.*, 399 F.Supp. 1092 (D.Ariz.1974) Aff'd. 524 F.2d 1145 (9th Cir. 1975); *Manning v. Princeton Consumer Discount Co., Inc.*, 390 F.Supp. 320 (E.D.Pa.1975) Aff'd. 533 F.2d 102 (3rd Cir. 1976).

**6.** Notes of the Advisory Committee on 1966 Amendments to Fed.R.Civ.P. 23, 28 U.S.C. at 428–29 (1976), 39 F.R.D. 69, 102 (1966). *See*

also *La Mar v. H & B Novelty and Loan Company*, 489 F.2d 461, 466 (9th Cir. 1973).

**7.** If it develops that defendant collected collection fees from consumers whose debts were not based on a written agreement comparable to the Dr. Arbaje agreement, it may become necessary to divide the class into subclasses.

**8.** First Amended Complaint, par. I(2).

Sixth, are plaintiffs' claims typical of the claims of the class? Plaintiff Duran alleges that she "has paid all amounts which Defendants attempted to collect, including amounts not authorized specifically by the contract and prohibited by the FDCPA." Plaintiff Ramirez alleges that defendant has obtained a default judgment against him which includes $103.50 in collection fees. Typicality is shown because defendant has admitted collecting such fees or obtaining judgments which include fees in at least 105 cases.

Seventh, will the named parties plaintiff fairly and adequately represent the interests of the class? Nothing has been presented to indicate that they will not.

Eighth, is a class action superior to other available methods for the fair and efficient adjudication of the controversy? For making this determination, the Rule provides:

"... The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

These factors are not exclusive, *Esplin v. Hirschi*, 402 F.2d 94 (10th Cir. 1968), but are listed to provide guidance to the court.

■ Class action certifications to enforce compliance with consumer protection laws are "desirable and should be encouraged". *Watkins v. Simmons and Clark, Inc.*, 618 F.2d 398, 404 (6th Cir. 1980). Not only does it enable class members to share in a financial recovery which they might otherwise never pursue on their own behalf, but it also "provides an opportunity to educate a segment of the public, those included in the class, of the obligations which creditors owe to them as credit consumers." *Id.*

■ Whatever collection fees have been imposed upon individual members of the class may not be large enough to justify individual actions for recovery. Since class action is appropriate where individual class members have little incentive to sue alone, *State of Illinois v. Harper & Row Publishers, Inc.*, 301 F.Supp. 484, 489 (N.D.Ill.1969), the interest of the individual members in controlling the prosecution of separate suits is not important. *See Green v. Wolf Corp.*, 406 F.2d 291, 301 (2nd Cir. 1968). Additionally, those who do wish to opt out of the class may do so to prosecute their own suits. Fed.R.Civ.P. 23(c)(2).

■ Commencement of a class action suspends the applicable statute of limitations as to all potential members of the asserted class. *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 553–54, 94 S.Ct. 756, 766, 38 L.Ed.2d 713 (1974). An action to enforce any liability created by the FDCPA must be commenced within one year from the date on which the violation occurs. 15 U.S.C. § 1692k(d). Thus the preservation of the claims of members of the class also indicates superiority.

Further, it does not appear that certification of this class would cause any management difficulties. The members of the class are located in a compact area, principally Yuma County, and compliance with the notice requirements of Rule 23 would not appear to pose any problem. At this point, the Court cannot envision any management problems which would outweigh the benefits of a class action.

Accordingly, the Court will enter an order that this action be maintained as a class action with respect to the issue of whether the defendant has charged collection fees in violation of the Act. The named plaintiffs will also be able to continue their claims for damages for other alleged violations of the Act. The statement of the Court's November 19 memorandum that "[t]he only FDCPA violations which would entitle plaintiffs to an award of damages is the alleged collection of collection fees not authorized by contract or statute," was intended to refer only to an issue which was appropriate for class action treatment. It was not intended to be a ruling that dam-

ages recoverable by plaintiffs were limited to collection fees.

## DEFENDANT'S NET WORTH

In a class action to enforce liability under the FDCPA, the defendant may be held liable for damages to class members "not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector." 15 U.S.C. § 1692k(a)(2)(B). The Court's order of November 17, 1981 ordered the defendant to file under oath its net worth as of the date of the end of the last accounting period before July 23, 1980, and to file copies of any balance sheets or financial statements prepared by or in behalf of defendant in the last two years. In response to the order, the defendant's President filed an affidavit in which he averred that he did not know the net worth of defendant. Attached to the affidavit was a copy of the defendant's federal income tax return for 1980. At the proper time, it may become necessary to have the defendant's net worth determined by a certified public accountant using recognized accounting procedures.

## ORDERS

IT IS ORDERED that this action be maintained as a class action. The class shall be composed of all persons either from whom defendant has collected a collection fee or against whom defendant has obtained a judgment in which a collection fee was a part of the judgment since July 23, 1980.

IT IS FURTHER ORDERED that this order shall be subject to alteration or amendment before the decision on the merits as authorized by Rule 23(c)(1) of Federal Rules of Civil Procedure.

IT IS FURTHER ORDERED that within 30 days from the date of this order, defendant provide counsel for plaintiffs with the names and addresses of all persons who are members of the above-described class.

IT IS FURTHER ORDERED that counsel for the parties prepare and submit to the Court not later than April 7, 1982 a proposed form of notice to be directed to members of the class in compliance with Rule 23(c)(2) of the Federal Rules of Civil Procedure.